**UNITED STATES of America, Appellant,**

v.

**NAREMCO, INC., et al., Appellees.**

**No. 76–1623.**

United States Court of Appeals,
Eighth Circuit.

Submitted Feb. 16, 1977.

Decided April 18, 1977.

Rehearing Denied May 25, 1977.

---

**1140**

James F. Ponsoldt, Atty., Dept. of Justice, Washington, D. C., for appellant; Donald I. Baker, Acting Asst. Atty. Gen., and Carl D. Lawson, Atty., Dept. of Justice, Washington, D. C., Richard A. Merrill, Chief Counsel, Robert M. Spiller, Jr., Associate Chief Counsel for Enforcement, and Donald O. Beers, Asst. Chief Counsel for Enforcement, Food and Drug Division, Dept. of Health, Education and Welfare, Rockville, Md., on brief.

Richard F. Kingham, Washington, D. C., O. J. Taylor, Taylor, Stafford & Gannaway, Springfield, Mo., for appellees.

Before GIBSON, Chief Judge, CLARK, Associate Justice, Retired,* and HEANEY, Circuit Judge.

GIBSON, Chief Judge.

For nine years, Naremco, Inc. and the Government have disagreed over the applicability of certain provisions of the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 301 et seq. (Supp. V. 1975), to products containing gentian violet (methylrosaniline chloride). Naremco,[1] a Missouri corporation, has repeatedly manufactured and sold a variety of products containing gentian violet without first obtaining pre-marketing approval from the Food and Drug Administration (FDA).

Naremco has consistently contended that its products are exempt from statutory provisions requiring pre-marketing approval. The Government, with equal tenacity, has maintained that Naremco's gentian violet products, marketed as animal drugs and as additives to animal feed, may not be sold without pre-marketing FDA approval. Naremco's nonapproved interstate sales of gentian violet products have been contested by the Government in repeatedly successful seizure suits under 21 U.S.C. § 334.[2] The Government's victories in these seizure actions have been largely Pyrrhic, however. After each adverse ruling, Naremco has simply varied the composition and label of the condemned product slightly and recommenced sale without obtaining pre-marketing approval, thus necessitating yet another round of litigation. The Government's seizure approach has ultimately resulted in a paradox: despite the repeated condemnation and seizure of Naremco's individual gentian violet products, Naremco continues, with relative impunity, to market gentian violet remedies and products without obtaining pre-marketing approval.

In an effort to end this litigious cycle, the Government brought the instant suit under 21 U.S.C. § 332(a) to enjoin Naremco from the future interstate sale of gentian violet products used as animal drugs or additives to animal feed until and unless pre-marketing approval was obtained from the FDA. After an evidentiary hearing, the District

---

* The Honorable Tom C. Clark, Associate Justice, Retired, United States Supreme Court, sitting by designation.

1. The other defendants-appellees are officers of Naremco, Inc.

2. See United States v. Articles of Food and Drug, Coli-Trol 80 Medicated, 518 F.2d 743 (5th Cir. 1975); United States v. An Article of Drug . . . "Entrol-C Medicated", 513 F.2d 1127 (9th Cir. 1975); United States v. Seven Cartons, More or Less . . . "Ferro Lac Swine Formula Concentrate", 424 F.2d 1364 (7th Cir. 1970); United States v. 41 Cases, More or Less, 420 F.2d 1126 (5th Cir. 1970); United States v. 14 Cases, More or Less . . . "Naremco Medi-Matic", 374 F.Supp. 922 (W.D.Mo.1974).

Court granted the Government's request for preliminary injunctive relief as to all the products named in the complaint[3] except GV-Eleven Medicated, a drug used to treat internal fungal diseases in poultry, and GV-Eleven Mold Inhibitor, a food additive used to prevent fungal growth in poultry feed. Gentian violet is the sole active ingredient in both products.[4] On April 20, 1976, a permanent injunction was entered which incorporated the operative provisions of the preliminary injunction. The Government appeals from the memorandum order of April 20, 1976, insofar as it permits the continued marketing of GV-Eleven products and any other articles of food or drug containing gentian violet as their only functional ingredient.

■■■ Before addressing the particular application of the Federal Food, Drug, and Cosmetic Act to the idiosyncrasies of this case, we deem it appropriate to set forth briefly the tenets of judicial construction that will guide us. The Federal Food, Drug, and Cosmetic Act is a remedial statute designed for the protection of the consumer. *United States v. Urbuteit,* 335 U.S. 355, 358, 69 S.Ct. 112, 93 L.Ed. 61 (1948). As remedial legislation, the Act must be given a liberal construction consistent with its overriding purpose to protect the public health. *United States v. Bacto-Unidisk,* 394 U.S. 784, 798, 89 S.Ct. 1410, 22 L.Ed.2d 726 (1969). Judicial awareness of the purpose of the Federal Food, Drug, and Cosmetic Act should insure that the Act is treated as "a working instrument of government and not merely as a collection of English words." *United States v. Dotterweich,* 320 U.S. 277, 280, 64 S.Ct. 134, 136, 88 L.Ed. 48 (1943). However, while the technicality of the Act must not deter a sensible judicial construction, the courts should not forget that under the regulatory scheme estab-

lished by the Act, the FDA is the arm of government empowered to make threshold determinations as to the issue of the Act's coverage. *CIBA Corporation v. Weinberger,* 412 U.S. 640, 644, 93 S.Ct. 2495, 37 L.Ed.2d 230 (1973). Because Naremco has thus far evaded the application of the Act's pre-marketing clearance requirements to all of its gentian violet products, there have been no formal administrative determinations by the FDA as to whether these products are new animal drugs or food additives. Under these circumstances, a trial court would be well advised to "stay its hand, awaiting an appropriate administrative determination of the threshold question" of the Act's coverage. *CIBA Corporation v. Weinberger, supra* at 644, 93 S.Ct. at 2498.

### GV-Eleven Medicated

The propriety of the District Court's exemption of GV-Eleven Medicated from pre-marketing approval turns upon a determination of whether or not GV-Eleven Medicated is a new animal drug. If a product is a new animal drug within the meaning of 21 U.S.C. § 321(w), it may not be sold until a new drug application has been approved. Section 321(w)(1) provides:

> The term "new animal drug" means any drug intended for use for animals other than man * * * the composition of which is such that such drug is not generally recognized, among experts qualified by scientific training and experience to evaluate the safety and effectiveness of animal drugs, as safe and effective for use under the conditions prescribed, recommended, or suggested in the labeling thereof.

The District Court found that GV-Eleven Medicated was not a new animal drug because it was generally recognized among

---

**3.** The Government sought to enjoin the introduction or delivery into interstate commerce of products designated as "Entrol-C", "Entrol-P", "Entrol-S", "Mycotrol-P", "Mycotrol-S", "Myconox-P", "Myconox Soluble", "Medi-Matic Medicated", "Ferro-Lac Calf Boluses", "Ferro-Lac Calf Formula", "GV-Eleven", "Myconox-LF" and any similar products containing or consisting of gentian violet.

**4.** Both GV-Eleven Medicated and GV-Eleven Mold Inhibitor contain 1.6% gentian violet and 98.4% inert ingredients (95.25% calcium carbonate, 1.65% calcium silicate, 1% acetic acid and .5% water).

experts qualified by scientific training and experience to evaluate the safety and effectiveness of animal drugs, as safe and effective for use under the conditions prescribed, recommended or suggested by its labeling.

 We have carefully reviewed the evidence offered to establish the general recognition among experts of the safety and effectiveness of gentian violet, the sole active ingredient in GV-Eleven Medicated. While the record contains some evidence that gentian violet is recognized by experts as safe, it lacks evidence of general expert recognition of gentian violet's effectiveness as an animal drug. There is evidence of scattered lay opinion that gentian violet is effective in treating certain fungal diseases in poultry. However, lay and expert recognition are not interchangeable under § 321(w), which specifies that the general recognition of effectiveness necessary to remove a drug from the strictures of obtaining pre-marketing approval must be that of "experts qualified by scientific training and experience to evaluate the safety and effectiveness of animal drugs." Moreover, the Supreme Court has read the requirement of general expert recognition of effectiveness to mean that:

> [T]he hurdle of "general recognition" of effectiveness requires at least "substantial evidence" of effectiveness * * *. In the absence of any evidence of adequate and well controlled investigations supporting the efficacy of [the product], *a fortiori* [it] would be a "new drug" subject to the provisions of the Act.[5]

*Weinberger v. Hynson, Wescott & Dunning,* 412 U.S. 609, 629–30, 93 S.Ct. 2469, 2483, 37 L.Ed.2d 207 (1973) (footnotes omitted).

 In concluding that gentian violet was not a new animal drug, the trial court must have considered lay recognition of ef-

fectiveness equivalent to expert recognition, for no evidence was presented which showed general expert recognition of gentian violet's effectiveness or which established the existence of adequate and well controlled investigations upon which general expert recognition of effectiveness could be based.[6] In allowing lay opinion to be substituted for the expert recognition required by the Act, the trial court incorrectly applied § 321(w). The record here, which lacks evidence of general recognition by experts of the effectiveness of gentian violet as an animal drug, compels the conclusion that gentian violet is a new animal drug which may not be marketed until a new animal drug application has been submitted and approved.

### GV-Eleven Mold Inhibitor

The propriety of the District Court's exemption of GV-Eleven Mold Inhibitor from the requirement of obtaining pre-marketing approval depends upon whether or not GV-Eleven Mold Inhibitor is a food additive. A product which is a food additive may not be sold in interstate commerce unless it conforms to a food additive regulation or has been exempted from such conformity. 21 U.S.C. § 348. 21 U.S.C. § 321(s) provides:

> The term "food additive" means any substance the intended use of which results or may reasonably be expected to result, directly or indirectly, in its becoming a component or otherwise affecting the characteristics of any food * * *, if such substance is not generally recognized, among experts qualified by scientific training and experience to evaluate its safety, as having been adequately shown through scientific procedures (or, in the case of a substance used in food prior to January 1, 1958, through either scientific procedures or experience based

---

5. This definition of the requisites of general recognition of effectiveness among experts refers to 21 U.S.C. § 321(p), which relates to human drugs. However, the language used in § 321(w) with regard to animal drugs is identical to that of § 321(p) and there is no reason to limit the holding of *Hynson* to human drugs. *United States v. Articles of Food and Drug, Coli-Trol 80 Medicated,* 372 F.Supp. 915, 921

(N.D.Ga.1974), *aff'd,* 518 F.2d 743 (5th Cir. 1975).

6. We note, moreover, that the record shows that no established veterinary school teaches or recommends that gentian violet is an effective drug for the treatment of internal disease in animals.

on common use in food) to be safe under the conditions of its intended use * *.

The District Court found that gentian violet, the only active ingredient in GV-Eleven Mold Inhibitor, was a substance that had been used in poultry feed prior to January 1, 1958, and that it was generally recognized among experts qualified by scientific training and experience to evaluate its safety, as having been adequately shown through experience based on common use in food to be safe under the conditions of its intended use. Thus, it concluded that gentian violet was not a food additive and could be marketed without the necessity of conforming to or obtaining a food additive regulation.

A review of the evidence reveals that products containing gentian violet were added to poultry feed prior to January 1, 1958. The pre-1958 use of gentian violet in poultry feed was as an animal drug, however, not as a mold inhibitor or feed preservative. Naremco contends, and the trial court apparently agreed, that the addition of gentian violet to animal feed as a drug provided experience based on "common use in food" prior to 1958 that experts could rely upon to recognize the safety of using gentian violet as a food additive. This contention neglects the vital difference between the use of a substance as a drug and as a food additive. When used as a drug to treat internal disorders, gentian violet is fed to animals for sporadic and short periods of time. When used as a food additive to preserve feed, gentian violet is a constant factor in an animal's diet. Chronic ingestion of a substance differs significantly from short-term ingestion. Because food additives are a constant dietary factor, Congress has considered an appraisal of their cumulative effects essential to an evaluation of their safety. *See* S.Rep.No.2422, 85th Cong. 2d Sess. 5, *reprinted in* [1958] U.S.Code Cong. & Ad.News p. 5300; H.R. Rep.No.2284, 85th Cong., 2d Sess. 6 (1958).

We believe that experience based upon common use in food, which is a means of proving to experts the safety of a food additive "under the conditions of its intended use" and which serves as an alternative to scientific proof of safety, refers to experience based on common use as a food additive or under conditions producing long-term ingestion and approximating use as a food additive. Accordingly, the pre-1958 use of gentian violet as an animal drug cannot be considered probative of the "experience based on common use in food" required by 21 U.S.C. § 321(s) to demonstrate its safety under the conditions of its intended use as a food additive.

The record lacks evidence of pre-1958 use of gentian violet as a food additive or under conditions of long-term ingestion approximating use as a food additive.[7] Nor is there evidence of scientific procedures comporting with the requirements of *Weinberger v. Hynson, Wescott & Dunning, supra,* upon which experts could base recognition of the safety of gentian violet as a food additive. The record is thus devoid of evidence probative of general expert recognition of the safety of gentian violet as a food additive and the trial court's finding that gentian violet has been shown to be generally recognized by experts as safe under the conditions of its intended use must be set aside as clearly erroneous.

The decision of the District Court is reversed insofar as it excludes GV-Eleven Medicated, GV-Eleven Mold Inhibitor and any other animal drug or food additive containing gentian violet as its sole active ingredient from the order of permanent injunction.

Remanded for proceedings consistent with this opinion.

---

7. Testimony that prior to 1958 one particular gentian violet drug was recommended for continuous use and was purportedly used by "some customers" for up to six weeks in animal food for poultry is patently insufficient to establish "experience based on common use in food."