UNITED STATES of America,
Plaintiff-Appellee,

v.

MOSINEE RESEARCH CORPORATION and U. S. Pharmaceuticals, Inc., a corporation, and Albert C. Iwen, Douglas R. Evers, John M. Couture d/b/a Product Distributors Co., Joseph J. Birkenstock, and Ralph D. Pennings, Individuals, Defendants-Appellants.

No. 77–1982.

United States Court of Appeals,
Seventh Circuit.

Argued June 9, 1978.
Decided Aug. 18, 1978.

Stephen E. Kravit, Asst. U. S. Atty., Milwaukee, Wis., for plaintiff-appellee.

Robert E. Armstrong, Chicago, Ill., for defendants-appellants.

Before CUMMINGS and TONE, Circuit Judges, and CAMPBELL, Senior District Judge.*

TONE, Circuit Judge.

This is an appeal from a preliminary injunction restraining continued violations of the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 331(a), (d), (k), and (p). The violations consisted of the manufacture and distribution in interstate commerce of amygdalin, otherwise known as Laetrile, which was found to have been misbranded and adulterated. We affirm.

Pursuant to a complaint for forfeiture and injunction filed by the government, the United States Marshal seized from defendant U. S. Pharmaceuticals, Inc.'s premises in Manitowoc, Wisconsin, quantities of whole and ground apricot kernels, powdered and "clumped" amygdalin, and gelatin capsules, all of which were materials used in the manufacture of amygdalin, otherwise known as Laetrile. The government thereafter filed an amended complaint, Count I of which requested forfeiture and condemnation of the seized articles pursuant to 21 U.S.C. § 334(a), and Count II of which sought injunctive relief against U. S. Pharmaceuticals and the other defendants, prohibiting them from further manufacture and distribution of articles of food and drug like those seized, pursuant to 21 U.S.C. § 332(a).

The court held a hearing on the issue of whether a preliminary injunction should be issued under Count II of the complaint. Numerous witnesses, including experts, testified, and many exhibits were received. Following the hearing the court entered findings of fact and conclusions of law, and issued the preliminary injunction which is the subject of this appeal.

Subsequent to the issuance of the injunction, the marshal seized amygdalin tablets bottled for sale at the office of defendant Product Distributors Co. On December 1, 1977, the District Court stayed pending appeal that part of the preliminary injunction relating to destruction of materials seized. The court declined to stay the other provisions of the injunctive order. *United States v. Articles of Food and Drug,* 441 F.Supp. 772 (E.D.Wis.1977).

I.

■ Defendants' first argument is that the District Court improperly determined that amygdalin was a "new drug." It is apparently defendants' position that only the Food and Drug Administration has jurisdiction to determine in the first instance whether an article is a "new drug."

Nothing in the *Weinberger* cases on which defendants rely, *Weinberger v. Bentex Pharmaceuticals, Inc.,* 412 U.S. 645, 93 S.Ct. 2488, 37 L.Ed.2d 235 (1973), and *Weinberger v. Hynson, Westcott, and Dunning, Inc.,* 412 U.S. 609, 93 S.Ct. 2469, 37 L.Ed.2d 207 (1973), supports the proposition that a district court does not have jurisdiction to determine whether an article is a "new drug" under circumstances such as those present in the case at bar. The *Weinberger* cases, which also include *CIBA Corp. v. Weinberger,* 412 U.S. 640, 93 S.Ct. 2495, 37 L.Ed.2d 230 (1973), and *USV Pharmaceutical Corp. v. Weinberger,* 412 U.S. 655, 93 S.Ct. 2498, 37 L.Ed.2d 244 (1973), recognize primary jurisdiction in the Food and Drug Administration to decide the "new drug" issue, subject only to direct judicial review when administrative remedies have been exhausted. That issue may not be relitigated in a judicial proceeding. In the *CIBA* case, the Court recognized that the Act provides FDA with "a second line of defense—civil injunction proceedings, criminal penalties, and *in rem* seizure and condemnation," 412 U.S. at 644, 93 S.Ct. at 2498, and went on to say,

* The Honorable William J. Campbell, Senior District Judge of the United States District Court for the Northern District of Illinois, is sitting by designation.

Cases may arise where there has been no formal administrative determination of the "new drug" issue, it being first tendered to a district court. Even then, however, the district court might well stay its hand, awaiting an appropriate administrative determination of the threshold question.

412 U.S. at 644, 93 S.Ct. at 2498. The Court does not say that the district court must stay its hand. It is inconceivable that Congress intended that, when a preliminary injunction is sought under 21 U.S.C. § 332(a) to protect public health, the district court would be unable to act until the lengthy administrative proceedings necessary to determine the "new drug" issue have been completed.

Defendants have also argued that the United States District Court for the Western District of Oklahoma determined in *Rutherford v. United States,* 438 F.Supp. 1287 (1977), that amygdalin is not a "new drug" and that the FDA is bound by that determination. Since the submission of the case at bar, however, the district court's decision in *Rutherford* has been reviewed by the Tenth Circuit, which has in effect set aside the district court's determination that Laetrile is not a "new drug." *Rutherford v. United States,* 582 F.2d 1234 (10th Cir. 1978). In *Rutherford* the plaintiffs were a class of terminally ill cancer patients. The Tenth Circuit held "that the 'safety' and 'effectiveness' requirements of the statute as now written have no application to terminally ill cancer patients who desire to take the drug intravenously." The injunction which the district court had issued on the basis of its finding that Laetrile was not a "new drug" was modified in conformity with the Tenth Circuit's limited holding. Accordingly, we need not consider what effect a final judgment in that case that Laetrile is not a "new drug" would have had on the case at bar.

We note that before the commencement of the instant action, Laetrile had been determined to be a "new drug" in four other actions. *United States v. Spectro Foods Corp.,* No. 76–101 (D.N.J., Jan. 29, 1976), *aff'd in part and rev'd in part,* 544 F.2d 1175 (3rd Cir. 1976); *Hanson v. United States,* 417 F.Supp. 30 (D.Minn.1976), *aff'd,* 540 F.2d 947 (8th Cir. 1976); *Gadler v. United States,* 425 F.Supp. 244 (D.Minn. 1977); *see also United States v. General Research Labs,* 397 F.Supp. 197, 199 (C.D. Cal.1975); *In re Morgan v. Matthews,* No. 76–1637 (D.S.C., Nov. 30, 1976).[1]

The District Court had jurisdiction to consider the "new drug" status of amygdalin for purposes of the enforcement proceeding before it and properly exercised that jurisdiction in issuing the preliminary injunction.

II.

■ Plaintiffs argue that another district court's determination that apricot kernels were not "adulterated," *Millet, Pit and Seed Co. v. United States,* 436 F.Supp. 84 (E.D. Tenn.1977), operated as a collateral estoppel against the government here. To the extent that this argument goes to the validity of the seizure, we do not consider it, because the validity of the seizure is not before us. The apricot kernels were not seized pursuant to the preliminary injunction, which is the subject of this interlocutory appeal, but pursuant to a § 334 libel on information, the merits of which have not been finally determined by the District Court.

■ The collateral estoppel argument may also be viewed as an attack on the validity of the findings on which the preliminary injunction is based. Even acceptance of the argument that the principle of collateral estoppel is applicable in this context would not, however, entitle defendants to reversal of the preliminary injunction. This is so not only because the injunction is based on uncontroverted findings with re-

---

1. Our decision is consistent with that of the Sixth Circuit in *Parke, Davis & Co. v. Califano,* 564 F.2d 1200 (1977), in which the court held that a drug manufacturer may not obtain an injunction against a § 334 enforcement action in a separate action based on the pendency of a "new drug" application. *Id.* at 1204–1206.

spect to misbranding, as well as adulteration findings, but also because the findings on adulteration relate to the amygdalin produced from the apricot kernels, not the kernels themselves,[2] and are based on unsanitary methods of manufacture and handling and strength of the drug, in addition to the presence of cyanide in the drug. Thus even if the *Millet, Pit* judgment collaterally estopped the government with respect to facts necessarily determined in that action (and we do not reach that issue), the preliminary injunction would not be affected.

### III.

■ Defendants also argue that the scope of the relief granted was too broad. The government, however, had made a sufficient showing of continued violations of § 331, and the preliminary injunction was reasonably directed to the prohibition of such violations. *See United States v. Spectro Foods Corp., supra,* 544 F.2d at 1180.

It is unnecessary to discuss the various other contentions of defendants. Except for the provisions of the injunction which awards costs to the government under 21 U.S.C. § 334(e) and which the government now concedes should be deleted, the various provisions of the preliminary injunction are justified by the findings and conclusions of the District Court and are proper. The paragraph on costs will be stricken.

The preliminary injunction, as modified herein, is affirmed. The plaintiff will recover its costs on appeal.

AFFIRMED AS MODIFIED.

2. In *Millet, Pit,* the court found that the apricot pits were not promoted or sold as a treatment for any disease and were not in any form suggesting that they were a drug, 436 F.Supp. at 89–91. The contrary was true in the case at bar. It is the use to which the material is to be put that triggers the prohibitions of the Act. 21 U.S.C. § 321(g)(1)(B), (D). Under that provision a "drug" is any article "intended for use in the· diagnosis, cure, mitigation, treatment, or prevention of disease in man . . . ." In addition, "articles intended for use as a component of any article specified in clause . . . (B) . . . ." are also drugs under the Act. The apricot pits in the case at bar, unlike those involved in *Millet, Pit,* are intended for use as a component of articles intended to treat disease in man, under the well supported findings of the District Court.