UNITED STATES of America, Plaintiff,

v.

ARTICLES OF DRUG, et al., Defendants,

Midwest Pharmaceuticals, Inc., Claimant.

UNITED STATES of America, Plaintiff,

v.

MIDWEST PHARMACEUTICALS, INC., et al., Defendants.

Nos. CV. 84–0–206, CV. 84–0–323.

United States District Court, D. Nebraska.

Dec. 11, 1984.

Paul J. Johns, Asst. U.S. Atty., Omaha, Neb., for plaintiff.

John M. O'Connor, DeForest & Duer, New York City, Anthony M. Troia, Omaha, Neb., for defendants.

## ORDER

SCHATZ, District Judge.

This matter coming on for determination with reference to the findings and recommendations of the magistrate as to the government's motion for summary judgment upon counterclaims made by the claimant (Filing No. 28 in CV. 84–0–206), the claimant's motion for partial summary judgment as to some seized items (Filing No. 37 in CV. 84–0–206), and defendants' motions to dismiss (Filing Nos. 24 and 25 in CV. 84–0–323), and the Court having carefully reviewed said findings and recommendations and having reviewed the briefs filed in support of and in opposition to said motions, and having noted defendants' objections have been filed with reference to said findings and recommendations, and be-

ing fully advised in the premises, the Court hereby adopts said findings and recommendations of the magistrate.

With reference to defendants' Objections to Magistrate's Findings and Recommendations, the Court rejects defendants' argument that a distributor may not be enjoined for the alleged improper actions of persons over whom the distributor has no control. In *Inwood Laboratories, Inc. v. Ives Laboratories, Inc.*, 456 U.S. 844, 853–56, 102 S.Ct. 2182, 2187–89, 72 L.Ed.2d 606 (1982), a trademark infringement case, the United States Supreme Court held that liability will extend beyond those who actually do the wrongful act under certain circumstances:

> Even if a manufacturer does not directly control others in the chain of distribution, it can be held responsible for their infringing activities under certain circumstances. Thus if a manufacturer or distributor intentionally induces another to infringe a trademark, or if it continues to supply its product to one whom it knows or has reason to know is engaging in trademark infringement, the manufacturer or distributor is contributorily responsible for any harm done as a result of the deceit.

*Inwood*, 456 U.S. at 853–54, 102 S.Ct. at 2187–88.

In *Sony Corp. v. Universal City Studios*, —— U.S. ——, 104 S.Ct. 774, 789, 793, 78 L.Ed.2d 574 (1984), a copyright infringement case, the Supreme Court also referred to the doctrine of extended or contributory liability, stating that such liability will not be extended unless there is a showing by a preponderance of the evidence that the alleged wrongful use is substantial and harmful, or that some meaningful likelihood of future harm exists. These cases point out that the doctrine of extended or contributory liability is alive and well today.

▇▇▇ This Court concludes that the doctrine of extended or contributory liability is applicable in an action alleging violations of the Federal Food, Drug and Cosmetic Act, 21 U.S.C. § 301, *et seq.* In light of the Act's broad purpose of protecting the public's health and safety, the Court further

concludes that manufacturers and distributors may be held contributorily liable for the alleged violations of 21 U.S.C. § 352(i)(2) if they intentionally induced another to commit any such violation, or if they knew, had reason to know or reasonably could have anticipated that a substantial portion of their products would be passed off as controlled substances by others in the chain of distribution. Accordingly,

IT IS HEREBY ORDERED that the said findings and recommendations of the magistrate be and the same are hereby confirmed and adopted by this Court in all respects; and

IT IS FURTHER ORDERED:

1) That the government's motion for summary judgment upon counterclaims made by the claimant (Filing No. 28 in CV. 84–0–206) be and the same is hereby granted;

2) That the claimant's motion for partial summary judgment (Filing No. 37 in CV. 84–0–206) be and the same is hereby denied;

3) That defendant Midwest Pharmaceutical's motion to dismiss (Filing No. 24 in CV. 84–0–323) be and the same is hereby denied; and

4) That defendant Steven F. Sommers' motion to dismiss (Filing No. 25 in CV. 84–0–323) be and the same is hereby denied.

### MAGISTRATE'S FINDINGS AND RECOMMENDATIONS
October 19, 1984.

RICHARD C. PECK, United States Magistrate.

Pursuant to the provisions of *28 U.S.C. § 636*, findings and recommendations are herewith made upon the Government's motion (filing 28 in CV84–0–206) for summary judgment upon counterclaims made by the claimant, the claimant's motion (filing 37 in CV84–0–206) for partial summary judgment as to some seized items, and motions by two of the defendants (filings 24 and 25 in CV84–0–323) to dismiss.

Midwest Pharmaceuticals, Inc., a/k/a B & S Distributors (hereinafter "Midwest") has been engaged in distribution of drug products from locations in the Omaha, Nebraska metropolitan area. Steven F. Sommers is now president and principal owner of the corporation. Robert S. Liebert, until recently, was its president.

These two cases, consolidated for trial by previously entered order, are: first, an *in rem* seizure and condemnation action against the drug products described in the caption of CV84-0-206, with allegations that they are imitation drugs, thus misbranded within the meaning of *21 U.S.C. § 352(i)(2)*, and subject to seizure under the provisions of *21 U.S.C. § 334*, and in which Midwest, as claimant of the products, has filed an answer and three stated counterclaims; and second, an action (CV84-0-323) for injunctive relief, under the provisions of *21 U.S.C. § 332(a)*, against Midwest and its present and former president.

The overriding issue in both cases is whether the Federal Food, Drug, and Cosmetic Act makes a distinction between "counterfeit" drugs and "imitation" drugs; and, if so, whether the evidence upon which the·government relies will establish that the products involved are imitations of controlled substances. If the answer to both questions is "yes", the Government wins.

■ Included in the acts prohibited by provisions of *21 U.S.C. § 331* is misbranding of drugs or their introduction, delivery or receipt in interstate commerce. Misbranded drugs are by *21 U.S.C. § 334* made subject to seizure proceedings.

By the provisions of *21 U.S.C. § 352(i)(2)*, a drug is misbranded "... if it is an imitation of another drug...." The word "imitation" is nowhere further defined in the provisions of the Act.

In the section confined to definitions of terms there is included at *21 U.S.C. § 321(g)(2)*:

The term 'counterfeit drug' means a drug which, or the container or labeling of which, without authorization, bears the trademark, trade name, or other iden-tifying mark, imprint, or device, or any likeness thereof, of a drug manufacturer, processor, packer, or distributor other than the person or persons who in fact manufactured, processed, packed, or distributed such drug and which thereby falsely purports or is represented to be the product of, or to have been packed or distributed by, such other drug manufacturer, processor, packer, or distributor.

The provisions of *21 U.S.C. § 332(a)* empower district courts of the United States to enjoin acts prohibited by the provisions of *21 U.S.C. § 331* but exclude from availability of that remedy, among other things, an act which causes a drug to be a "counterfeit drug" or the sale of a "counterfeit drug". The remedy which may be invoked by the Government in instances of counterfeit drugs distribution is that incorporated in the provisions of *21 U.S.C. § 334(a)(2)* for seizure of:

(A) Any drug that is a counterfeit drug,

(B) Any container of a counterfeit drug, and

(C) Any punch, die, plate, stone, labeling, container, or other thing used or designed for use in making a counterfeit drug or drugs.

The essence of Midwest's position is that the term "imitation" as used in *§ 352(1)(2)* must be equated with the term "counterfeit drug" as defined in § 321(g)(2), which means one bearing without authorization the identifying marks of another manufacturer or distributor; that since the drug products in question admittedly did not bear identifying marks belonging to another manufacturer or distributor, they are not "counterfeit" and, therefore, not subject to seizure; and that no statutory authority for invocation of the remedy of injunction exists.

The essence of the Government's position is that the descriptive words·"counterfeit" and "imitation" are not treated in the Food, Drug, and Cosmetic Act as being synonymous; that while a counterfeit drug is one using identifying markings of another manufacturer or distributor as defined in the Act, an imitation drug is one "passed off"

to the consumer as being a specific substance which in fact it is not; and that the Act in question authorizes both the remedies of seizure and of injunction for the contradiction of traffic in imitation drugs.

The evidence upon which the Government represents it will rely at trial to sustain its position encompasses a history and pattern of operations followed by Midwest and its officers in its distribution of the drug products in question. Included are alleged facts that Midwest's distribution of products is not to buyers for drug stores or similar retail outlets; its business is largely of the mail order type; advertisements are not carried in retail trade journals but in magazines such as High Times and Hustler with emphasis upon the appearance of the products; distribution of capsules and pills of its products are largely in bottles containing 1000 units; the bottles are labeled "This product does not contain amphetamines, narcotics or barbituates", but the first purchaser discards that packaging and repackages the contents into "baggies" for street sales, largely to elementary school students; ingredients of the pills and capsules are either caffeine or ephedrine but are so sized, shaped and colored as to mimic street substances which have come to be known as "speed", "black beauties", "reds", "yellowjackets", "downers", etc., which are controlled drug substances; that the ultimate consumer purchases and uses products so distributed by Midwest in belief that they are illicit controlled substances; that there is recognizable risk to the health of drug users consuming imitation drugs in belief that they are in fact controlled substances; and that such "passing off" as imitation of controlled substances is contemplated and known by Midwest and is the reason for the existence of the industry of which Midwest is a part.

■ A complaint is not to be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Robinson v. M.F.A. Mutual Insurance Co.,* 629 F.2d 497 (8 Cir.1980). Accordingly, viewing the allegations in the light most favorable to the Government in the complaint for injunction, the defendants' motions to dismiss must fail if the court first determines that the phrase "imitation of another drug," as used by the Congress in enacting *21 U.S.C. § 352(i)(2),* is distinguishable from the statutorily defined term "counterfeit drug" and means a substance being passed off in interstate commerce as a drug other than what it in fact is.

Neither side points to decisional law squarely dispositive of the question. In dicta, the Supreme Court recently said that the provisions of *21 U.S.C. § 352(i)* are "intended to prohibit a company from passing an imitation off as the original...." *United States v. Generix Drug Corporation,* 460 U.S. 453, 103 S.Ct. 1298, 1302 n. 9, 75 L.Ed.2d 198 (1983). Reported decisions have made quite apparent that, when faced with necessity to construe broadly worded provisions of the Federal Food, Drug, and Cosmetic Act, the courts have consistently interpreted its terms expansively in order to achieve its purposes. That tenet of judicial construction is summarized in *United States v. Naremco, Inc.,* 553 F.2d 1138, 1141 (8 Cir.1977) as follows:

> The Federal Food, Drug, and Cosmetic Act is a remedial statute designed for the protection of the consumer. *United States v. Urbuteit,* 335 U.S. 355, 358, 69 S.Ct. 112, 93 L.Ed. 61 (1948). As remedial legislation, the Act must be given a liberal construction consistent with its overriding purpose to protect the public health. *United States v. Bacto-Unidisk,* 394 U.S. 784, 798, 89 S.Ct. 1410 [1418] 22 L.Ed.2d 726 (1969). Judicial awareness of the purpose of the Federal Food, Drug, and Cosmetic Act should insure that the Act is treated as 'a working instrument of government and not merely as a collection of English words.' *United States v. Dotterweich,* 320 U.S. 277, 280, 64 S.Ct. 134, 136, 88 L.Ed. 48 (1943).

■ Acceptance of Midwest's contention that "imitation," as used in § *352(i)(2),* must be considered synonymous with

"counterfeit," as used in § 321(g)(2), would require treatment of the Act as a "mere collection of English words" and, in effect, an elimination from the Act of the misbranding provision of § *352(i)(2)*. From a reading of § 321(g)(2) it is quite clear that the counterfeiting prohibitions in the Act are directed only toward the practice of simulating on a product, its labeling or container, another's identifying mark or imprint. Entirely consistent with that statute is an interpretation that the imitation misbranding provision of § *352(i)(2)* reaches the differing practice of a passing off of one substance in imitation of another. Construing thus the two statutory provisions accords with the established principle of statutory construction that if two provisions are capable of co-existence, each is to be regarded as effective. *See, e.g. Morton v. Mancari*, 417 U.S. 535, 551, 94 S.Ct. 2474, 2483, 41 L.Ed.2d 290 (1974).

Midwest argues that such an interpretation of § *352(i)(2)* renders the provisions unconstitutionally vague because it does not include an objective standard sufficient for ready recognition as to how a particular product, not otherwise a controlled substance, becomes an imitation drug and thus misbranded.

■ That argument is but a circuitous play on words. The production and marketing of drugs is a highly regulated industry. In the field of regulatory statutes governing limited business activities, a greater leeway is allowed in sustaining a statute against a vagueness attack. *United States v. National Dairy Products*, 372 U.S. 29, 83 S.Ct. 594, 9 L.Ed.2d 561 (1963). There the court said:

> The strong presumptive validity that attaches to an Act of Congress has led this Court to hold many times that statutes are not automatically invalidated as vague simply because difficulty is found in determining whether certain marginal offenses fall within their language. *E.g., Jordan v. De George*, 341 U.S. 223, 231 [71 S.Ct. 703, 707, 95 L.Ed. 886] (1951), and *United States v. Petrillo*, 332 U.S. 1, 7 [67 S.Ct. 1538, 1541, 91 L.Ed. 1877]

(1947). Indeed, we have consistently sought an interpretation which supports the constitutionality of legislation. *E.g., United States v. Rumely*, 345 U.S. 41, 47 [73 S.Ct. 543, 546, 97 L.Ed. 770] (1953); *Crowell v. Benson*, 285 U.S. 22, 62 [52 S.Ct. 285, 296, 76 L.Ed. 598] (1932); *see Screws v. United States*, 325 U.S. 91 [65 S.Ct. 1031, 89 L.Ed. 1495] (1945).

> Void for vagueness simply means that criminal responsibility should not attach where one could not reasonably understand that his contemplated conduct is proscribed. *United States v. Harriss*, 347 U.S. 612, 617 [74 S.Ct. 808, 811, 98 L.Ed. 989] (1954). In determining the sufficiency of the notice a statute must of necessity be examined in the light of the conduct with which a defendant is charged. *Robinson v. United States*, 324 U.S. 282 [65 S.Ct. 666, 89 L.Ed. 944] (1945).

*Id.* 32–33, 83 S.Ct. at 597–598. In the instant cases, if the Government is able to prove those facts alleged, it is entirely reasonable to expect that Midwest and its officials understood that a passing off of caffeine, for example, as "speed" was engagement in distribution of "an imitation of another drug." The cry of vagueness is without substance; and the same conclusion follows as to Midwest's contention that it is not accountable for the circumstance that street vendors of their products distribute them as imitations of controlled substances.

■ Accordingly, I find that the Federal Food, Drug, and Cosmetics Act does not treat synonymously the words "counterfeit" and "imitation" in its categorization of drug substances, that an imitation drug is one passed off as a different drug substance than it in fact is, that in appropriate factual circumstances the remedy of injunction is available under provisions of the Act to contradict manufacture and distribution of imitation drugs, and that the motions of the defendants Midwest and Sommers to dismiss the complaint seeking injunctive re-

lief (filings 24 and 25 in CV84–0–323) should be denied.

For the same reasons I find that the motion of claimant Midwest for summary judgment in the seizure action (filing 37 in CV84–0–206) should be denied.

There remains for consideration the Government's motion for summary judgment (filing 28 in CV84–0–206) upon the counterclaims asserted by claimant Midwest in its answer to the complaint for seizure and forfeiture of the described drug products.

 The first counterclaim is in reality a request for enforcement of *Rule 11, F.R. Cv.P.* sanctions under a contention that Government counsel filed the seizure complaint without first making reasonable inquiry as to whether *it was well grounded in fact and warranted by law.* *Rule 11* obviously does not create an independent cause of action, but rather creates a remedial tool available to the court where clear showing is made of improper conduct on the part of the person signing and filing a pleading. Therefore, as a matter of law, the Government is entitled to summary judgment on the first counterclaim.

 The second counterclaim alleges abuse of process and the third counterclaim alleges failure to exercise due care in the investigation of the claim of misbranding. What has been said precedingly in these findings forecasts characterization of the frivolous nature of these claims. Stripped of their outer dressings, their substance is no more than an assertion that, because some question may be said to have existed as to the allowable interpretation which may be made of designated provisions of the Federal Food, Drug, and Cosmetics Act, Government counsel should have chosen not to proceed with the instant litigation. Clearly, the choice to proceed or not

to proceed was one necessarily made in exercise of a discretionary function, and any claim grounded in that judgment is barred by the provisions of *28 U.S.C. § 2680(a)* of the Federal Tort Claims Act.[1]

Accordingly, I find that, as a matter of law, the United States of America is entitled to summary judgment upon each of the three counterclaims recited in the claimant's answer in CV84–0–206.

IT IS THEREFORE RECOMMENDED to District Judge Albert G. Schatz that an order be entered:

1. Granting summary judgment to the United States of America upon the claimant's counterclaims recited in its answer in CV84–0–206, as requested in the motion at filing 28.

2. Denying the motion of the claimant Midwest Pharmaceuticals, Inc., for summary judgment in CV84–0–206, as requested at filing 37.

3. Denying the motion to dismiss in CV84–0–323 as made by defendant Midwest Pharmaceuticals, Inc., at filing 24, and also denying the motion to dismiss as made by defendant Steven F. Sommers in the same case at filing 25.

---

**1.** So finding, it becomes unnecessary to consider the Government's contention that no claim was first presented for administrative consideration as required by *28 U.S.C. § 2675,* and the claimant's contention that these are mandatory counterclaims of a nature obviating necessity to first pursue an administrative claim.