**Glen L. RUTHERFORD, Plaintiff, Intervenor,**

**and**

**Jimmie Stowe and Gene Schneider, Individually and on behalf of a class composed of cancer victims and their spouses, who are responsible for the costs of treatment, Original Plaintiffs,**

**v.**

**UNITED STATES of America and Caspar Weinberger, Secretary of Health, Education and Welfare, Defendants.**

**No. CIV–75–0218–B.**

United States District Court,
W. D. Oklahoma.

Aug. 14, 1975.

As Amended Oct. 10, 1975.

Clyde J. Watts of Watts, Looney, Nichols, Johnson & Hayes, Oklahoma City, Okl., for plaintiffs.

J. H. Geller, Associate Chief Counsel for Enforcement, Food and Drug Administration, Los Angeles, Cal., and William R. Burkett, U. S. Atty., by William S. Price, Asst. U. S. Atty., Oklahoma City, Okl., for defendants.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

BOHANON, District Judge.

The case was called and the parties announced ready for trial on plaintiff's Amended Complaint insofar as it pertains to a temporary injunction, plaintiff praying that this Court order and direct the Secretary of Health, Education and Welfare (HEW), of which the Federal Drug Administration (FDA) is a branch, to desist from precluding the administration of Vitamin B17 or laetrile to patients in the United States suffering from cancer.

The plaintiffs seek relief under the Fifth Amendment to the Constitution of the United States from the provisions of the Federal Food, Drug and Cosmetic Act, 21 U.S.C. §§ 1–392 alleging that by reason of the arbitrary and capricious acts of the Secretary the rights of the plaintiffs, under the Constitution of the United States and under the statutes herein involved, have been violated wherein plaintiffs are entitled to judicial relief and are entitled to maintain this action as a class action under Rule 23 Federal Rules of Civil Procedure.

Plaintiff Glen L. Rutherford testified that he became ill with cancer in the summer and fall of 1971 and that he was examined by local medical doctors who concluded that he was suffering from cancer. Thereafter he was sent to J. Walker Butin, M.D. of the Wichita Clinic, Wichita, Kansas, for examination and diagnosis.

A number of letters were written by the doctors treating Mr. Rutherford, none of which letters were written in contemplation of this legal action. Such letters which comprise Plaintiffs' Exhibit 1 are in pertinent part as follows:

On November 30, 1971, J. Walker Butin, M.D., of the Wichita Clinic, wrote to Eugene C. McCormick, M.D. of Wellington, Kansas, regarding plaintiff Rutherford:

*"Dear Dr. McCormick:*

*. . . We found the source of his bleeding on sigmoidoscopy. A large polyp is present at 15 cm. from the anal sphincter. It prolapses down and fills the lumen at this point. I was able to biopsy it and the specimen was sent to the Associated Laboratories; we should have a report in two or three days.*

*My proposal is that he be seen by Dr. Bartlett here with a sigmoidoscopy to see if it might be possible to remove this polyp from below by fulguration. At the moment I think it probably is too large for anything but surgical removal, but if it is okay with you and the patient, we will schedule him to see Dr. Bartlett for his opinion.*

\* \* \* \* \* \*

*At the moment the arrangement is that he will call us back for the biopsy report in 72 hours, and we will arrange follow-up with Dr. Bartlett and will get his polyp out in the near future."*

Dr. Butin again wrote on December 4, 1971:

*"Dear Dr. McCormick:*

*Here is the latest followup on Mr. Rutherford.*

*He was seen by Dr. Bartlett yesterday, December 3, and was advised that, because of the biopsy showing an invasive adenocarcinoma in the polyp, he should have open operation.*

*Consequently, he is scheduled to enter Wesley Medical Center on December 10, 1971, for preoperative colon prep and apparently will have surgery several days later, possibly on Tuesday, December 14. The lesion is at about 15 centimeters which is an area where abdominoperineal resection is sometimes necessary. However, it is our hope that he can have an anterior resection with reformation of the normal bowel continuity possible."*

On February 28, 1972, Dr. Butin wrote to Dr. Price of Wellington, Kansas:

*"Dear Dr. Price:*

*Mr. Rutherford reported to the Wichita Clinic on November 1, 1971, with a history of aching in the left upper quadrant and bloody stools. On examination, he was rather tender in*

the middle and left upper abdomen, but there were no specific findings of mass or palpable organs.

Sigmoidoscopy of 15 cm revealed a large prolapsing polyp which appeared pedunculated. This was biopsied and the path report described invasive, well differentiated adenocarcinoma.

He saw Dr. Bartlett on December 3, 1971, and was scheduled to enter Wesley on December 10 for surgery. He was told that removal of the rectum might be necessary but that it would be saved, if possible. As you are well aware, he has not reported for this surgery.

\*       \*       \*       \*       \*       \*

We would certainly urge Mr. Rutherford not to delay any longer than the three months, which have already been lost, in the treatment of his polyp. This should be an entirely curable lesion, if removal is performed without delay."

The plaintiff Glen L. Rutherford testified that he was tremendously upset and concerned about the prospects of surgery and the results thereof and that he went to Centro Medico Del Mar in Tijuana, Mexico, for examination and treatment shortly after the report from Dr. Butin was made to him. He stated that at Centro Medico Del Mar he was treated with Vitamin B17 or laetrile for a period of weeks and that through this treatment his condition was cured; that he has returned to his home and has been working at all times since, averaging 10 to 12 hours per day. Mr. Rutherford stated that he has no ill effect of the cancer. However, he feels that without the continued use of laetrile as diagnosed by Dr. Carlos Lopez he faces the prospect of escalation of the lethal cancer cells and thus is seeking relief in this Court for the privilege of buying laetrile for his own use and not for sale or barter to others.

Carlos Lopez, M.D., of the Centro Medico Del Mar, Tijuana, Mexico, wrote on August 8, 1974:

"Re:   Glen L. Rutherford

This 57 year old white male came to us for a checkup on June 27, 1974. His past history revealed rectal bleeding in the summer of 1969. Saw a doctor at this time and was told it was diverticulitis. He was referred to Dr. Butin in November 1971. After a sigmoidoscopy they found a large polyp and a biopsy was performed. This showed invasive adenocarcinoma. Scheduled for surgery December 10, 1971, but did not show up.

Came first time to our hospital on December 21, 1971. After treatment here the bleeding had quit and we cauterized the remaining polyp. The treatment was Amygdalin i.v. (3 grams) plus proteolytic enzymes. He took home oral B17 and Wobe-Mugos enzymes.

Now he has come again for a checkup. Physical examination unremarkable . . . .

Chest X-Rays show a doubtful nodule in the left lung in the R.M.L. portion (lingula). The rest of the studies were negative. Barium enema did not show any tumors in the rectum, but showed a diverticulitis inflamation of some of them and others with fecal matter.

We asked him to continue on same dosage of B17 2 pills (500 mg each) a day and 3 Wobe-Mugos enzymes a day."

The Court is compelled to find from the testimony and the exhibits that plaintiff Glen L. Rutherford was in late 1971 suffering from invasive adenocarcinoma and that by the use of laetrile, B17 or amygdalin (all being the same drug) his condition was cured, as there is no evidence to the contrary.

The Court finds that plaintiff's Exhibit 2 is a letter from Mr. Rutherford's supplier of B17 or laetrile stating plaintiff's last order of laetrile was seized. It states that the carrier is in jail facing a $10,000 fine and five years in prison for his efforts to furnish Mr. Rutherford

**1212**

his 1975 supply of laetrile. The writer says that the clinic cannot be responsible and that therefore there will be no more mail orders of laetrile in the future.

The Court finds that the plaintiff Rutherford is not free to have shipped to him, nor is he free to directly purchase and bring back to the United States from Mexico quantities of laetrile for preventative treatment of his cancer. To do so would violate the law and would subject him to criminal prosecution.

21 U.S.C. § 355 provides:

*"(a) No person shall introduce or deliver for introduction into interstate commerce any new drug, unless an approval of an application filed pursuant to subsection (b) of this section is effective with respect to such drug."*

In this connection the Court finds that laetrile has been in use for a number of years in Mexico and other nations around the world; that the FDA has by its regulations made it impossible for the common man to have an application processed through FDA so that said agency would either approve or disapprove the drug known as laetrile. The Court finds that Congress intended by 21 U.S.C. § 355 that the FDA would on its own initiative and in good faith approve or disapprove the use of laetrile, thereby allowing the courts jurisdiction of the subject matter.

■ The Court finds that the FDA has abdicated its duty to make a clear determination of whether the drug laetrile should or should not be placed in commerce though the drug has been in use for many years and thousands of persons have been treated with it.

The Court finds from the record, testimony and exhibits that laetrile is not lethal in any sense of the word. It is not harmful to the human body and when used in proper amounts under proper control and supervision can effect relief from cancer disease to the satisfaction of many who are privileged to use the same.

■ The Court further finds from the record that the plaintiff Rutherford herein and those similarly situated have been denied this right of choice in using B17 or laetrile without just cause on the part of the Secretary of HEW and its agency FDA.

Inaction by the FDA constitutes the crux of plaintiff's procedural dilemma, and the question arises relevant to plaintiff's request for equitable relief, as to whether an interpretation or contruction of § 355 authorizes such inaction and is in keeping with the Congressional intent the statute embodies. Section 355 states in part:

*"(c) Within one hundred and eighty days after the filing of an application . . . <u>the Secretary shall either</u>—*

*<u>(1) approve the application</u> . . .*

*<u>or</u>*

*(2) give . . . notice of an opportunity for a hearing . . . .*

*(d) If the Secretary finds, after due notice to the applicant . . . that (1) the investigations . . . do not include adequate tests . . .; (2) the results . . . show that such drug is unsafe . . . or do not show that such drug is safe . . .; (3) the methods used . . . or (5) . . . there is a lack of substantial evidence that the drug will have the effect it purports . . . <u>he shall issue an order refusing to approve the application."</u>*

*(Emphasis Added)*

It can be seen that the statute allows but two alternatives: the issuance of an order approving the application or the issuance of an order refusing to approve the application. The evidence does not reflect the Secretary to have done either. Without a refusal order, the plaintiff may not invoke the jurisdictional grant of § 355 giving jurisdiction to the Court of Appeals where applicant resides or the United States Court of Appeals for the District of

Columbia. This section permits the United States Court of Appeals for the Tenth Circuit to take original jurisdiction.

Thus the statutory duty has not been carried out and cancer victims have thereby been placed in limbo with regard to laetrile, unable to invoke the jurisdiction of the courts. Since the Secretary has failed to act, the Court must act on behalf of this plaintiff who has been adversely affected by such failure. Congress has not legislated a statute which can be used by silence and inaction to still the clamor and demands of citizens, especially those nearly 1,000 who die each day of cancer.

■ Since the FDA has failed to act in contemplation of what Congress intended by § 355, the Court concludes and finds the HEW and FDA have in fact disapproved the use of laetrile and that this Court does have jurisdiction for want of action on the part of such governmental agencies.

Michael L. Culbert states in his book, *Vitamin B17*, published by Arlington House, New Rochelle, New York, at page 81:

*"In April 1970 the Food and Drug Administration assigned IND (Investigative New Drug) application 6734 to the McNaughton Foundation, based in California, to test amygdalin-Laetrile, a move which would have given the foundation permission to obtain supplies of the 'investigational drug' and to initiate clinical studies. Then, ten days later, permission was suddenly revoked by the FDA, allegedly at the behest of the then surgeon general Jesse Steinfeld, a California physician involved in the California Medical Association ban on the compound in the 1950s. Dr. Charles C. Edwards, FDA commissioner, stated on June 9, 1970:*

*As with all 'cancer' drugs the review of the IND was expedited . . . This review was completed on April 27, 1970, 21 days from the date of receipt. The review disclosed a number of serious preclinical deficiencies.*

*On April 28, 1970, a 10-day pretermination notice was issued detailing the deficiencies in the notice, and the sponsor was notified by wire to immediately cease clinical studies. The sponsor was allowed 10 days in which to either request a conference or to correct the deficiencies which were brought to his attention.*

*Since the sponsor did neither, the IND was terminated on May 12, 1970.[8]"*

■ The Court finds that the plaintiff Rutherford and those similarly situated are wholly without means or resources to comply with the provisions of 21 U.S.C. § 355(b) and that for the plaintiff Rutherford and those similarly situated to be denied the freedom of choice for treatment by laetrile to alleviate or cure their cancer, was and is a deprivation of life, liberty or property without due process of law guaranteed by the Fifth Amendment to the Constitution of the United States.

In *Abbott Laboratories v. Gardner*, 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967) where a similar problem confronted the Courts, the Supreme Court recognized that the issue was a proper subject for judicial resolution, where a hardship from precluding Court consideration was demonstrated. Certainly hardship is revealed in this case where plaintiffs are afflicted with cancer and are denied their choice of treatment by surgery, radiation cobalt treatments or by laetrile. The Supreme Court in the above cited case makes the following comments:

*"The first question we consider is whether Congress by the Federal Food, Drug, and Cosmetic Act intended to forbid pre-enforcement review of this sort of regulation . . . .. The question is phrased in terms of 'pro-*

*hibition' rather than 'authorization' because a survey of our cases shows that judicial review of a final agency action by an aggrieved person will not be cut off unless there is persuasive reason to believe that such was the purpose of Congress. . . .*

*. . . The Government relies on no explicit statutory authority for its argument that pre-enforcement review is unavailable . . . .*

*. . . 'any citizen aggrieved by any order of the Secretary, who contends that the order is invalid, may test the legality of the order by bringing an injunction suit against the Secretary, or the head of the Bueau, under the general equity powers of the court.'*

\* \* \* \* \* \*

*This is also a case in which the impact of the regulations upon the petitioners is sufficiently direct and immediate as to render the issue appropriate for judicial review at this stage."*

In *Roe v. Wade,* 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973), the Court extended to a pregnant woman the right of "privacy" which included the right to demand an abortion, contrary to a state criminal statute, even though the Constitution does not explicitly mention any right of privacy. The Court, nevertheless, extended such constitutional right to a pregnant woman in the following language:

*"This right of privacy, whether it be founded in the Fourteenth Amendment's concept of personal liberty and restrictions upon state action, as we feel it is, or, as the District Court determined, in the Ninth Amendment's reservation of rights to the people, is broad enough to encompass a woman's decision whether or not to terminate her pregnancy."*

Justice Stewart in a concurring decision commented:

*"Several decisions of this Court make clear that freedom of personal choice in matters of marriage and family life is one of the liberties protected by the Due Process Clause of the Fourteenth Amendment."*

The Court concludes that in cases where jurisdiction is clearly shown, the Court may balance the various factors appropriate to the requested relief. Here the evidence is convincing that irreparable harm to the plaintiff overshadows the possible harm to the defendants or other interested persons. The plaintiff Rutherford's cancer is presently dormant; however, there is danger of recurrence of the cancer unless plaintiff continues to receive treatment. In addition, the plaintiff in order to have and use B17 or laetrile is subjecting himself and his agent to criminal prosecution should plaintiff contravene prohibitions set out in § 355 by making what plaintiff feels is a life versus law decision, *Continental Oil Co. v. Frontier Ref. Co.,* 338 F.2d 780 (C.A.10, 1964).

■ The Court concludes that it has jurisdiction under 28 U.S.C. § 1337 where provision is made for jurisdiction of proceedings arising under any Act of Congress regulating commerce and where the prohibiting language of § 355 of the Pure Food and Drug Act stems from and has to do with commerce powers of the United States. It has been shown that the plaintiff here is precluded from transporting laetrile or B17 in commerce. *See Schatte v. International Alliances of Theatrical Stage Employees & Moving Picture Operators of U. S. and Canada,* 70 F.Supp. 1008 (D.C.Cal.1947), *aff'd* 165 F.2d 216 (9 Cir.) *cert. denied* 334 U.S. 812, 68 S.Ct. 1018, 92 L.Ed. 1743.

The Court finds from the evidence that laetrile is not a toxic or harmful substance if used in proper dosage but is

on the other hand an alternative treatment of cancer which can be used in lieu of surgery or radiation cobalt.

After plaintiff presented its evidence and rested, the Court inquired of defendant counsel if defendant had any evidence to offer and the reply was in the negative. Thereafter the following colloquy took place:

"MR. GELLER: On the jurisdictional issue, if the Court finds that there is no jurisdiction, the Court could, I believe, allow them to take that up on appeal. If the Court finds there is no jurisdiction, then there is no lawsuit anyway and I think that would be a final judgment.

\*   \*   \*   \*   \*   \*

MR. GELLER: If the Court did grant a temporary injunction, we would take a stay and we would take it up to the Circuit as soon as possible for review by the Tenth Circuit Court of Appeals.

THE COURT: Suppose I would enter an injunction in the nature of a permanent injunction and stay it until you could take it up on appeal.

MR. GELLER: Assuming the Court would be found to have jurisdiction, then what the Court would in essence be doing would be saying that this drug is perfectly acceptable to be used and would be an implicit finding by the Court that this drug is effective for the use for which it is intended and perfectly safe, and I think under the state of the evidence before the Court it is not possible to make such a finding. The Government has not presented nor has it been aware of the necessity to do so in the nature of a hearing on the merits. It has been our understanding that this is temporary to allow one individual to receive this and we have attacked it solely on the jurisdictional ground."

From all of the facts and circumstances in this case the Court concludes that proper equitable injunctive relief should be granted and a proper Order will accordingly be filed.