Howard H. **BREITMEYER** et al., Plaintiffs,

v.

Joseph **CALIFANO**, Secretary of U. S. Department of Health, Education & Welfare, Defendant.

Civ. A. No. 7–72854.

United States District Court, E. D. Michigan, S. D.

Sept. 28, 1978.

James E. Wells, Southfield, Mich., for plaintiffs.

L. Michael Wicks, Asst. U. S. Atty., Detroit, Mich., for defendant.

## MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS AND DENYING PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

PHILIP PRATT, District Judge.

Plaintiffs are a group of terminally ill cancer patients and spouses of terminally ill cancer patients. They desire to import into the United States for their own use a substance known as "Essiac", but allege that their efforts toward this end have been thwarted by the policies and actions of the Food and Drug Administration, an agency of the United States Department of Health, Education and Welfare, of which defendant Joseph Califano is the Secretary. On December 5, 1977 they filed their Complaint, seeking, on behalf of all terminally ill cancer patients in southeastern Michigan,[1] a decree declaring that Essiac is exempt from regulation as a new drug under the Federal Food, Drug, and Cosmetic Act of 1938, 21

U.S.C. § 301 *et seq.*, and an injunction prohibiting the FDA from interfering with the importation and use of Essiac by plaintiffs and the putative class.

The matter was first brought before the Court upon the plaintiffs' Motion for Preliminary Injunction. The defendant responded to plaintiffs' Motion with his own Motion to Dismiss. Oral arguments directed to both motions were heard on June 26, 1978. Plaintiffs were given an opportunity to respond in writing to defendant's Motion, and counsel for both sides have agreed to waive further argument.

One of the grounds on which the defendant has premised his Motion is that the Court is without jurisdiction to consider plaintiffs' case and order the relief requested. Within the constitutional framework of our governmental system federal courts have but limited jurisdiction. Article III of the Constitution grants the courts power to hear a case only as Congress chooses to confer such power upon them. Thus, federal courts are charged with the Constitutional duty of constant vigilance and conscientious solicitude for the limits of their jurisdiction. It follows that the Court herein may not properly proceed to consider the merits either of plaintiffs' claim or of defendant's defenses until it has disposed of the jurisdictional question. *Bell v. Hood,* 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946).

The Court holds that under the state of facts that have been set forth before it, it lacks the power to order the relief requested in the Complaint and will continue to lack that power until plaintiffs have exhausted the remedies available to them before the FDA.[2]

1. The plaintiffs have not yet moved for certification of their putative class. The disposition ordered herein renders that aspect of the case moot at this juncture.

2. The Court earnestly hopes that neither the bluntness of this announcement nor the substance of this holding will be misconstrued as a sign of a lack of sensitivity and empathy on its

part. I am keenly aware—who in this society is not?—of the pain, suffering, and anguish endured by victims of cancer. This vicious disease has left its indelible imprint on the lives of all of us; rare indeed must be the person who has escaped the heartrending experience of witnessing the plight of a family member or other loved one in its throes.

To account for this holding, the Court must discuss the pertinent portions of the statutory scheme created by the Food, Drug, and Cosmetic Act, *supra*, as they have been expounded by the United States Supreme Court and the Sixth Circuit Court of Appeals.

Section 304(a)(1) of the Act, 21 U.S.C. § 334(a)(1), subjects to liability for seizure and condemnation any drug whose introduction into interstate commerce is prohibited by Section 505. Section 505(a) of the Act, 21 U.S.C. § 355(a), prohibits the introduction or delivery for introduction into interstate commerce of any new drug, unless a new drug application that conforms to the standards prescribed in Section 505(b) has been filed with the FDA and has been approved. "New drug" is a term of art, defined in Section 201(p)(1), 21 U.S.C. § 321(p)(1), to encompass

> "[a]ny drug . . . the composition of which is such that such drug is not generally recognized, among experts qualified by scientific training and experience to evaluate the safety and effectiveness of drugs, as safe and effective for use under the conditions prescribed, recommended, or suggested in the labeling thereof, . . ."

but excluding from the class so defined any drug

> "if at any time prior to the enactment of this chapter [*i. e.*, any time before June 25, 1938] it was subject to the Food and Drugs Act of June 30, 1906, as amended, and if at such time its labeling contained the same representations concerning the conditions of its use; . . ."

This latter provision is commonly referred to as the "1938 grandfather clause."[3] Finally, the term "drug" is defined in Section 201(g)(1), 21 U.S.C. § 321(g)(1) to include "articles intended for use in the diagnosis, cure, mitigation, treatment, or prevention of disease in man or other animals" and "articles (other than food) intended to affect the structure or any function of the body of man or other animals."

Plaintiffs concede that under the subjective standards contained in Section 201(g)(1), Essiac is a drug; it is intended to be used as a remedy for cancer, or at least as a palliative, and in light of such intended use, it is encompassed in the broad statutory definition. *See U. S. v. Bacto-Unidisk*, 394 U.S. 784, 89 S.Ct. 1410, 22 L.Ed.2d 726 (1969). Their position is that regardless of the opinion of qualified experts as to the safety and effectiveness of Essiac, it falls within the purview of the 1938 grandfather clause and, therefore, is not a new drug, as defined by § 201(p)(1), with the result that it is exempt from the new drug application requirements of § 505. The defendant contends that the Court would exceed its authority if it, rather than the FDA, were to undertake this inquiry in the first instance.

The resolution of the jurisdictional problem is advanced by consideration of two groups of Supreme Court opinions. In *Abbott Laboratories v. Gardner*, 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967) and its companions,[4] the Court held that self-operative administrative regulations of industry-wide application are not immune from pre-enforcement review by the district courts under the combined operation of the Declaratory Judgment Act, 28 U.S.C. § 2201, and the Administrative Procedure Act, 5 U.S.C. §§ 701–704. The proper application of the lower courts' power of review in the given case is, under *Abbott Laboratories*, essentially a question of ripeness.

> "Without undertaking to survey the intricacies of the ripeness doctrine it is fair to say that its basic rationale is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over ad-

---

**3.** Similarly, there is a provision often characterized as the 1962 grandfather clause, which operates to exempt certain drugs from the effects of the 1962 amendments to the Act. No question has been raised herein concerning the impact of this clause, and it has no bearing on the argument or decision of the instant case.

**4.** *Toilet Goods Assn., Inc. v. Gardner*, 387 U.S. 158, 87 S.Ct. 1520, 18 L.Ed.2d 697 (1967); *Gardner v. Toilet Goods Assn., Inc.*, 387 U.S. 167, 87 S.Ct. 1526, 18 L.Ed.2d 704 (1967).

ministrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties. The problem is best seen in a twofold aspect, requiring us to evaluate both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Id.* at 149, 87 S.Ct. at 1515 (footnote omitted).

In assessing the first aspect in the case there under discussion, the Court placed great emphasis on the definitiveness of the regulation at issue. Not only did the character of the regulation make it a "final agency action" for purposes of Section 10 of the Administrative Procedure Act, 5 U.S.C. § 704, but it also ensured that the issue was fit for judicial decision.

> "The regulation challenged here, promulgated in a formal manner after announcement in the Federal Register and consideration of comments by interested parties is quite clearly definitive. There is no hint that this regulation is informal, see *Helco Products Co. v. McNutt*, 78 U.S.App.D.C. 71, 137 F.2d 681, or only the ruling of a subordinate official, see *Swift & Co. v. Wickham*, [D.C.] 230 F.Supp. 398, 409, aff'd, [2 Cir.] 364 F.2d 241, or tentative."

In contrast, in applying the *Abbott Laboratories* test to another regulation in a companion case, *Toilet Goods Association, Inc. v. Gardner*, 387 U.S. 158, 87 S.Ct. 1520, 18 L.Ed.2d 697 (1967), the Court found that the force and application of the second regulation were not so certain as to warrant the pre-enforcement review authorized in the former case. In *Toilet Goods* the plaintiffs, manufacturers and distributors of cosmetics, sought review of a regulation that authorized the FDA to suspend certification service to persons who refused FDA personnel access to manufacturing facilities, processes, and formulae used in the production of color additives. Because the regulation there in question was permissive only and the manner of its enforcement would be decided by the FDA Commissioner in light of a variety of regulatory considera-

tions, the Court held that its validity would have to await determination at an actual enforcement proceeding.

Turning now to the instant case, the Court observes that the initial factual predicate of *Abbott* is lacking here, viz., the existence of an administrative regulation or other final agency action for which review could properly be sought here under the Administrative Procedure Act, *supra.* In other words, on the record before the Court and from its own diligent exploration of the Code of Federal Regulations and the Federal Register, it appears that there is no formal ruling or regulation declaring that Essiac is a new drug, not grandfathered by the latter portion of § 201(p)(1) of the Act.

The first suggestion by plaintiffs of the existence of such a regulation or ruling is to be found in paragraph 7 of the Complaint:

> "That defendant's agents have caused an herbal tea, known as Essiac to be seized at the United States-Canadian border and have informed the individual plaintiffs that Essiac cannot be imported without a new drug identification number."

The only support of these allegations is the affidavit of Patricia Judson, attached to plaintiffs' brief in support of their Answer to defendant's Motion to Dismiss. Ms. Judson is identified only as a resident of Dearborn, Michigan and a non-party to this action. She asserts

> "that during October of 1977, she did telephone the Food and Drug Administration at their local office and was referred to a gentleman, who informed her that attempts to bring ESSIAC, a cancer drug, into the country from Canada would not be allowed until approval by the agency of said drug.
>
> "Affiant then requested information about 'grandfathering' the applicable Act of Congress and she was informed that no such exceptions were recognized by the agency and that she must file a new drug application. Affiant then went to said office and received copies of the application, a copy of which is annexed hereto

and incorporated by reference, and was again informed that there was no procedure for exceptions to the Act and the form must be complied with in order to import ESSIAC."

Significantly, plaintiffs nowhere in their Complaint or in their submissions regarding the instant motions present to the Court anything from the FDA that could be taken to be an administrative ruling or regulation adequate to survive the threshold inquiry prescribed by *Abbott Laboratories, supra.*

The allegations of paragraph 7 of the Complaint do not support an inference that the seizures there referred to were irregular, *i. e.*, not in conformity with the Act and regulations promulgated pursuant thereto. Moreover, plaintiffs do not even allege that it was from them that the quantities of Essiac involved were seized. In the absence of clear indications to the contrary, the Court can assume only that the condemnation proceedings instituted by the government under § 304 of the Act afforded adequate opportunity to litigate the question of Essiac's status as a new drug *vel non, see Ewing v. Mytinger & Casselberry, Inc.*, 339 U.S. 594, 70 S.Ct. 870, 94 L.Ed. 1088 (1950), and the subject-matter of those proceedings is not to be relitigated in this Court. *CIBA Corp. v. Weinberger*, 412 U.S. 640, 93 S.Ct. 2495, 37 L.Ed.2d 230 (1973).

As to what unnamed persons have told the plaintiffs and Ms. Judson on behalf of the FDA, the Court can reach no conclusion but that these pronouncements do not attain the level of authority and definitiveness contemplated in *Abbott Laboratories,*

supra, as an indispensable antecedent to pre-enforcement review.

It is true that the alternative ground on which defendant bases his Motion to Dismiss goes to the merits of plaintiffs' claim, and he argues vigorously that Essiac is indeed a new drug, within the meaning of § 201(p)(1). This, however, is only a legal position adopted by defendant's counsel on behalf of the FDA and having application only with reference to this litigation; it does not constitute an official statement of FDA policy having industry-wide application. In another similar instance, before another court, defendant's counsel restricted himself solely to the jurisdictional question. *See Rutherford v. U. S.*, 399 F.Supp. 1208 (W.D.Okl.1975). When the District Court in that case found that it had jurisdiction (on a theory that the Tenth Circuit subsequently disavowed [see 542 F.2d 1137 (1976), affirming the judgment of the District Court but remanding *to the FDA* with orders to produce a full administrative record in support of its determination that laetrile is a new drug]), the plaintiffs' arguments on the merits were unopposed. In the light of this experience, it is understandable that counsel would prepare for the contingency that this Court's inventiveness would be equal to the task of finding in the record before it an adequate ground on which to base jurisdiction, however unlikely the actual occurrence of that contingency may have appeared at the time that defendant's strategy was planned.

The plaintiffs place great reliance on the series of *Rutherford* opinions.[5] Of the four

5. The *Rutherford* case has produced, so far, four reported decisions, two from the District Court and two from the Court of Appeals. At 399 F.Supp. 1208, Judge Bohanon found that the FDA's failure to act with respect to laetrile amounted to a determination that laetrile was a new drug, within the definition of the Act, and that determination was subject to the court's power of review.

"The Court finds that Congress intended by 21 U.S.C. § 355 that the FDA would on its own initiative and in good faith approve or disapprove the use of laetrile, thereby allowing the courts jurisdiction of the subject matter.

"The Court finds that the FDA has abdicated its duty to make a clear determination of whether the drug laetrile should or should not be placed in commerce though the drug has been in use for many years and thousands of persons have been treated with it." *Id.* at 1212.

Proceeding to the merits, the court held that it would violate the Due Process Clause of the Fifth Amendment to require the plaintiffs to comply with the NDA procedures prescribed by 21 U.S.C. § 355(b); that the extraordinary hardship that denial of judicial review would entail permitted the plaintiffs' case to pass muster under the *Abbott Laboratories* stan-

reported decisions, only the first two are pertinent to the present discussion, for the later ones followed an unmistakably formal ruling of the FDA Commissioner. As discussed more fully in the margin, the opinions of both the District Court and the Tenth Circuit disclose that they found, on different theories, that there was being implemented a determination by the FDA with respect to laetrile that was subject to pre-enforcement review in accordance with the standards set forth in *Abbott Laboratories, supra*. The Court here is dealing with an entirely different factual record from the one presented in *Rutherford*, and the Court has already expressed its view that the record before it is insufficient to support a finding that there exists such a ruling or determination on the part of the FDA in the instant case.

Assuming that the plaintiffs and Ms. Judson have not misapprehended what FDA personnel have told them regarding the procedures followed by the FDA and the policy adopted by it with respect to Essiac, in the absence of evidence to the contrary, the Court can infer only that they were unwittingly misled as to the availability to them of administrative recourse. They have been left with the impression that the only avenue by which they can raise before the agency the question of the grandfathering *vel non* of Essiac is a new drug application, which they do not have the resources either of time, energy, or expertise to prepare. In this instance, moreover, the new drug application would be an inappropriate avenue, since the application itself is directed only

to the safety and effectiveness questions raised in the first part of § 201(p)(1) and not to the effect in the given case of the grandfather clause.

The Court's own investigation of the agency's regulations, which are accessible to any attorney, has turned up a more felicitous procedure for plaintiffs' purposes, in subpart C of part 314 of Title 21 of the Code of Federal Regulations. Under 21 CFR § 314.200(d) any interested person may request a hearing. The hearing, once granted, would extend to all issues relating to Essiac's status as a new drug, including exemption under the grandfather clause. 21 CFR § 314.200(e)(2).

■ In the second series of Supreme Court opinions adverted to earlier herein, it was firmly settled that implicit in the Act is the grant of jurisdiction to the FDA to pass upon the status of a given substance as a new drug *vel non:*

"We think that it is implicit in the regulatory scheme, not spelled out *in haec verba*, that FDA has jurisdiction to decide with administrative finality, subject to the types of judicial review provided, the 'new drug' status of individual drugs or classes of drugs."
*Weinberger v. Bentex Pharmaceuticals, Inc.*, (1973) 412 U.S. 645, at 653, 93 S.Ct. 2488 at 2494, 37 L.Ed.2d 235.

"[T]he definition of 'new drug' as used in § 201(p)(1) involves a determination of technical and scientific questions by experts. The agency is therefore appropri-

dards; and that their legal position was sufficiently strong and the equities tipped so decidedly in their favor, that plaintiffs' motion for preliminary injunctive relief would be granted.

On appeal, the Tenth Circuit found, at 542 F.2d 1137, that the FDA's position with respect to laetrile had been made abundantly clear in the record, and that the FDA's determination that laetrile was a new drug was not supported by an adequate administrative record. It remanded the case to the·FDA in order to afford it an opportunity to establish such a record.

The FDA, having conducted an extensive inquiry, issued its findings and conclusions on July 29, 1977, and these were published at 42

Fed.Reg. 39768 on August 5, 1977. The Commissioner held that laetrile was not generally recognized by qualified experts as a safe and effective cancer drug, and that it was not exempted from the category of new drugs by either of the grandfather clauses.

Upon review of this ruling, Judge Bohanon vacated the Commissioner's decision. 438 F.Supp. 1287 (D.C.1977). On appeal, the Tenth Circuit found that the Commissioner had enunciated no standards by which the safety and effectiveness of a drug could be meaningfully assessed with reference to terminally ill people. It accordingly again remanded the case to the FDA for elaboration of such standards.

ately the arm of Government to make the threshold determination of the issue of coverage."

*CIBA Corp. v. Weinberger,* (1973) 412 U.S. 640 at 643–44, 93 S.Ct. 2495 at 2498, 37 L.Ed.2d 230.

"We do not accept the invitation to hold that FDA has no jurisdiction to determine whether a particular drug is a 'new drug' . . .

"Its determination that a product is a 'new drug' . . . is, of course, reviewable. But its jurisdiction to determine whether it has jurisdiction is as essential to its effective operation as is a court's like power. Cf. *United States v. Shipp,* 203 U.S. 563, 573, 27 S.Ct. 165, 166, 51 L.Ed. 319. The heart of the new procedures designed by Congress is the grant of primary jurisdiction to FDA, the expert agency it created. FDA does not have the final say, for review may be had, not in a district court (except in a limited group of cases we will discuss), but in a court of appeals. FDA does not have unbridled discretion to do what it pleases. Its procedures must satisfy the rudiments of fair play. Judicial relief is available only after administrative remedies have been exhausted."

*Weinberger v. Hynson, Westcott & Dunning, Inc.,* (1973) 412 U.S. 609 at 627, 93 S.Ct. 2469 at 2482, 37 L.Ed.2d 207.

■ In addition, the Sixth Circuit, applying *Bentex, supra,* has held that where the FDA has jurisdiction, its jurisdiction is exclusive. *Parke, Davis & Co. v. Califano,* 564 F.2d 1200 (6th Cir. 1977), *cert. denied* 435 U.S. 942, 98 S.Ct. 1522, 55 L.Ed.2d 539. This is consistent with the Sixth Circuit's expressed reluctance to extend liberally the statutorily created powers of federal courts to review administrative acts of federal agencies. *See Turkel v. Food and Drug Administration,* 334 F.2d 844 (6th Cir. 1964), *cert. denied* 379 U.S. 990, 85 S.Ct. 704, 13 L.Ed.2d 611.

In conclusion, the Court finds that there is available to plaintiffs at least one administrative remedy that they are required to attempt before its jurisdiction will attach over the subject-matter of their Complaint. If at some later date it should turn out that the agency has erroneously withheld action or has delayed unreasonably, *see* 5 U.S.C. § 706, plaintiffs will be able to present their claim in an entirely different posture. *See Harper v. Levi,* 171 U.S.App.D.C. 321, 520 F.2d 53 (1975). The Court is confident, however, that the Food and Drug Administration will respond to plaintiffs' plight with sympathy and concern, and that it will pilot them through the reefs of its procedures and around the shoals of its regulations with all the expedition that the interests of fairness and thoroughness will allow.

Accordingly, the Court being without jurisdiction, the plaintiffs' Motion for Preliminary Injunction is to be denied without prejudice, and the defendant's Motion to Dismiss is to be granted. Judgment will be entered in accordance with this Order.

IT IS SO ORDERED.