Forest Henry SHIPES, et al., Plaintiffs,

v.

**TRINITY INDUSTRIES, INC.**
Defendant.

**Civ. A. No. TY–80–462–CA.**

United States District Court,
E.D. Texas,
Tyler Division.

Dec. 28, 1987.

---

Larry R. Daves, Daves & McCabe, Tyler, Tex., Nell Hahn, Austin, Tex., for plaintiffs.

Robert E. Rader, Jr., George A. Harper, Ennis, Tex., for defendant.

## MEMORANDUM OPINION AND ORDER

JUSTICE, Chief Judge.

### I. *Introduction.*

This memorandum opinion relates to the remaining interim costs that the prevailing plaintiffs seek in regard to the liability phase of this action. The issue before the court boils down to whether the prevailing plaintiffs may be awarded, under 42 U.S.C. § 1988 or 42 U.S.C. § 2000e–5(k), the sums paid to certain specialists, who had worked on the statistical aspects of the liability phase of the case. Specifically, the effect of *International Woodworkers of America v. Champion International Corporation*, 790 F.2d 1174 (5th Cir.1986) (*en banc*), aff'd sub nom. *Crawford Fitting Company v. J.T. Gibbins, Inc.*, —— U.S. ——, 107 S.Ct. 2494, 96 L.Ed.2d 385 (1987), on the remaining requested costs is addressed.

A careful consideration of the *Woodworkers* holding leads to two conclusions. First, the defendant may not be taxed for any of the out-of-court services performed by the prevailing plaintiff's statistical and computer specialists, regardless of their status as expert witnesses. Second, if the *Woodworkers* rule is allowed to stand in this circuit, it will invite attorneys on both sides of the civil rights bar to choose between engaging in economically inefficient litigation practices, or abandoning their work in this area of the law. Neither option is palatable. Title VII litigants—both plaintiffs and defendants—will ultimately bear the burden, either in higher litigation costs, or in the *de facto* denial of access to the courts.

### II. *The Plaintiffs' Motion for Costs.*

In this employment discrimination action, the prevailing plaintiffs initially sought the total amount of money that they had advanced to their expert witnesses, as well as fees paid to other consulting specialists, for processing and analyzing the data turned up in discovery. As is frequently the situation in Title VII actions, the presentation of the merits of plaintiffs' case depended heavily on a statistical description of the defendant's employment practices. Nevertheless, the logic of *Woodworkers* compels the denial of all of these necessary costs, regardless of whether an expert witness, or merely a non-witness consultant, performed the work.

In a number of cases before *Woodworkers*, the U.S. Court of Appeals for the Fifth Circuit had permitted prevailing civil rights parties to recover their expert witness fees as costs. *See, e.g., Berry v. McLemore*, 670 F.2d 30, 34 (5th Cir.1982); *Jones v. Diamond*, 636 F.2d 1364, 1384 (5th Cir.) (*en banc*), *cert. dismissed*, 453 U.S. 950, 102 S.Ct. 27, 69 L.Ed.2d 1033 (1981); *see also Greenhaw v. Lubbock County Beverage Association*, 721 F.2d 1019, 1033 (5th Cir.1983) (same, antitrust case); *Copper Liquor, Inc. v. Adolph Coors Company*, 684 F.2d 1087, 1100 (5th Cir.1982), *modified on other grounds*, 701 F.2d 542 (5th Cir.1983) (*en banc*) (same, antitrust case); *cf. International Woodworkers of Amer-*

*ica v. Champion International Corporation,* 752 F.2d 163, 164 (5th Cir.1985) (per curiam) (vacated panel decision; prevailing civil rights plaintiffs entitled to all reasonable expert witness fees, but prevailing defendants are not). But the *Woodworkers en banc* decision specifically has overruled all of this authority. 790 F.2d at 1176, 1180–81 & n. 8. Under *Woodworkers,* the new Fifth Circuit rule is that, in civil rights actions, a losing party may not be taxed for an expert's services in excess of the $30.00 per day rate that is authorized by 28 U.S.C. § 1821 for in-court testimony.[1] This rule applies to all cases, like the one under consideration here, where the prevailing party seeks to recover the costs of an expert under 42 U.S.C. § 1988 or 42 U.S.C. § 2000e–5(k). *See* Part "III" of *Woodworkers en banc* decision, 790 F.2d at 1181.[2]

The distinction between an expert's in-court testimony and out-of-court preparation does not avail the plaintiffs, because it is irrelevant. The *Woodworkers en banc* holding applies not only to the expert witness' time and efforts on the stand, but to all of his work. The rule reaches "*services* . . . for the statistical aspects of the case." 790 F.2d at 1176 (emphasis added); *see also Woodworkers* panel decision, 752 F.2d at 164. It is not limited to expert *testimony.* Indeed, the *en banc Woodworkers* court states that it is impermissible to tax as costs any expenses not specifically authorized by 28 U.S.C. §§ 1920 and 1821. *See Woodworkers en banc* decision, 790 F.2d at 1179–80, *citing Henkel v. Chicago, St. Paul, Minneapolis & Omaha Railway Company,* 284 U.S. 444, 52 S.Ct. 223, 76 L.Ed. 386 (1932).

All courts of this circuit are bound by the new *Woodworkers* rule. It is their duty to apply it, not only in accordance with the general principles of jurisprudence, but also in compliance with the specific command of the decision. *See* 790 F.2d at 1181. Accordingly, regardless of the nature of the out-of-court services performed by the plaintiffs' expert witnesses, *Woodworkers* forbids this court from taxing their cost against the defendant.

Moreover, the broad sweep of the *Woodworkers* rule prohibits the taxation of the costs of the plaintiffs' nonwitness computer specialists, who had consulted on the statistical aspects of the case. As noted above, the rule obtains for the cost of all "services . . . for statistical aspects of the case," 790 F.2d at 1176, not simply the time that the experts spent testifying. It would be disingenuous to hold that *Woodworkers* prohibits the taxation of the statistical expert's fee, but still permits the award of fees for others, who were retained to prepare the expert witness.

For these reasons, the fees that the plaintiffs advanced for trial preparation to their retained specialists—both expert witnesses and nonwitness consultants—shall not be awarded.

### III. *The Effect of Woodworkers on Future Civil Rights Litigation in the Fifth Circuit.*

In his concurrence to *Woodworkers,* Judge Rubin notes that the new rule is squarely at odds with the decisional law of all other circuits, as well as the prior holdings of this circuit. *See* 790 F.2d at 1184–86, 1190–92, and cases collected therein. Judge Rubin persuasively argues that the failure of *Woodworkers* to place some limiting principle on the rule will result in the imposition of serious financial burdens on civil rights plaintiffs. (In this action, that seems to have occurred.) As discussed in the concurrence, some long-term consequences of the rule include the heightened

---

1. The only apparent exception to this rule is where the expert has been appointed by the court. *See* 28 U.S.C. § 1920(6).

2. In affirming *Woodworkers,* the U.S. Supreme Court confined its attention to the validity of the new rule under Fed.R.Civ.P. 54(d). It did not address the Fifth Circuit's application of the rule to Civil Rights Attorney's Fees Awards Act cases. *See Crawford Fitting Company, supra,* 107 S.Ct. at 2499 (Blackmun, J., concurring); *see also id.* at 2500 n. 1 (Marshall, J., dissenting). But it also did not overrule any aspect of the Fifth Circuit's holding. Thus, it is the Fifth Circuit's *en banc Woodworkers* decision, not the Supreme Court's affirmance, that directs the disposition of the motion for costs under consideration here.

likelihood of denying civil rights litigants access to the courts, or not making prevailing parties whole. *See id.* at 1183, 1193.

The *Woodworkers* rule seemingly will also give rise to economically inefficient litigation practices. Were *Woodworkers* simply to hold that the costs of an expert's "attendance at" court may not be taxed at a rate of more than $30.00 per day—the plainest construction of the language of 28 U.S.C. § 1821—the result would not be so onerous to the prevailing parties in this action, because the court would still retain some discretion to award legitimate and necessary out-of-court costs.

More significantly, civil rights litigation would not be so costly to *losing* parties in future civil rights cases. After *Woodworkers*, prevailing parties are assured of recovering only *attorney's fees* under § 1988 and § 2000e–5(k). Thus, *Woodworkers* invites attorneys to start personally assuming more of the specialists' work that formerly had been "contracted out" to nonattorney consultants as a matter of course in Title VII actions. Cheaper contract services shall play less of a role in trial preparation; more expensive attorney's services will replace them.

In this action, for example, much of the work that the plaintiffs' consultants performed probably could have been done—albeit less efficiently—by attorneys Hahn and Owen. Had they known that they were working in the shadow of *Woodworkers*,[3] they probably would not have delegated so much of this work. Hahn's and Owen's time is valued at $165.00 and $140.00 per hour, respectively. Assuming, hypothetically, that they are as skilled as their experts and consultants in the fields of computer programming and statistics, they could tax the defendant, as additional attorney's fees for trial preparation, two-and-a-half to five-and-a-half times the amount of costs that they now seek for their consultants' work, which was billed at an hourly rate of only $30.00 to $60.00. Moreover, because Hahn and Owen likely are not as skilled in these specialized areas

as the people they retained, they would have to spend far more time than an expert, "hunting and pecking" their way through the employment data. Assuming—conservatively—that it would have taken these attorneys only twice as long as their consultants to process and analyze the statistics, the defendant now could have been taxed, in added attorneys' fees under § 2000e–5(k), *five to eleven times* the costs that the plaintiffs actually seek for these various services.

Policies guiding the taxation of other litigation service costs should guide the award of expert witness and consultant fees. As a general rule of this circuit and of other jurisdictions, the prevailing party will be awarded, as part of taxable fees or costs, the recovery of payments made for paralegal and law clerk work. *See, e.g., Richardson v. Byrd,* 709 F.2d 1016, 1023 (5th Cir.), *cert. denied,* 464 U.S. 1009, 104 S.Ct. 527, 78 L.Ed.2d 710 (1983); *Kirksey v. Danks,* 608 F.Supp. 1448, 1459 (S.D.Miss.1985); *Mattie T. v. Holladay,* 522 F.Supp. 72, 78 (N.D.Miss.1981); *Falcon v. General Telephone Company,* 463 F.Supp. 315, 321 (N.D.Tex.1978), *modified on other grounds,* 626 F.2d 369 (5th Cir.1980), *vacated on other grounds,* 450 U.S. 1036, 101 S.Ct. 1752, 68 L.Ed.2d 234 (1981); *see also Jones v. Armstrong Cork Company,* 630 F.2d 324, 325 n. 1 (5th Cir.1980); *Guajardo v. Estelle,* 432 F.Supp. 1373, 1388 (S.D.Tex. 1977), *modified on other grounds,* 580 F.2d 748 (5th Cir.1978) (paralegals' pay awarded as costs; law clerks' fees disallowed because their employment was primarily for firm recruitment). The reason for this rule is simple: nonattorneys can perform many tasks more cheaply than attorneys, thus keeping the costs of litigation down. It appears a similar rule could be used in the taxation of experts' and consultants' costs, at least in civil rights actions like this one, where attorney's fees are authorized by statute and where the assistance of specialists is crucial to the proof or refutation of the allegations.

---

**3.** The trial of the liability phase of this action occurred in November and December, 1984.

The *Woodworkers* rule was promulgated eighteen months later.

It is beyond serious disagreement that experts are expensive. Nevertheless, their participation, and the supporting work of other consultants, is indispensable to the conduct of most Title VII actions. *Woodworkers* invites attorneys on both sides of the bar to elect the more extravagant option of personally performing pretrial tasks that are more cheaply and efficiently left to others. Title VII attorneys who are so cost-conscious, scrupulous, or foolhardy, as to continue to retain specialists for the statistical aspects of their cases, ultimately may find that they are unable to secure more than a Pyrrhic victory on behalf of their clients.

This potential for economic inefficiency and abuse threatens all litigants. Both plaintiffs and defendants will be saddled with higher legal bills while litigation is pending. Ultimately, the losing party will be taxed far more, in increased attorneys fees, than formerly had been the case when experts' costs were taxable.

### IV. *Conclusion.*

It is ORDERED that the plaintiffs' motion for the costs of out-of-court case preparation done by all expert witnesses and consultants retained by plaintiffs' counsel shall be, and it is hereby, DENIED.